| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW JERSEY** <br> Caption in Compliance with D.N.J. LBR 9004-1(b) <br> **TRAURIG LAW LLC** <br> Jeffrey M. Traurig, Esq. <br> One University Plaza, Suite 124 <br> Hackensack, New Jersey 07601 <br> (646) 974-8650 (Telephone) <br> jtraurig@trauriglaw.com <br><br> *Counsel for Creditor, Waterview Marketplace Owner LLC* | |
| In re: <br><br> Jean-Paul Romes & Lisa A. Romes, <br><br> Debtors. | Chapter 11 <br><br> Case Nos. 24-16283 (JKS) <br><br> Hearing Date: 2/25/25 @ 11:00 am <br> Objection Deadline 2/11/25 |

**OBJECTION OF WATERVIEW MARKETPLACE OWNER LLC TO ENTRY OF AN ORDER APPROVING ADEQUACY OF DISCLOSURE STATEMENT**

*Waterview Marketplace Owner LLC* ("Waterview" or the "Landlord"), by and through its undersigned counsel, hereby files this objection and reservation of rights (the "Objection") to the adequacy of the Disclosure Statement (the "Disclosure Statement") (Docket No. 29) filed by the above-captioned debtors (together, the "Debtors").

**SUMMARY OF OBJECTION**

1. Waterview objects to the Disclosure Statement because it does not contain adequate information to allow Waterview to make an informed decision on the proposed plan (the "Plan")(Docket No. 3). The Disclosure Statement provides for only $1,290 of quarterly payments to be paid to general unsecured creditors on a pro rata basis (which would aggregate to only $25,800 over 5 years).

2. Without any explanation, the projected income in the Cash Flow Projection (the

1

"Projections") (Docket No. 29, Exhibit C) that should be used to determine disposable income is hundreds of thousands of dollars less than actual income that the Debtor should expect based on actual income during the course of the Chapter 11 case. Comparing the feasibility discussion of the Disclosure Statement at p. 26 with the Projections show income approximately $8,000 - $10,000 less per month than current actual gross income.

3. There also is little information on the reasonableness and necessity of more than $430,000 of expenses during the five-year Plan period that could otherwise be made available to pay claims of general unsecured creditors.

4. Moreover, the Projections begin several months before the date the first payment would be due under the Plan and do not include the last several months of the 5-year Plan period when greater net revenue should be projected.

5. The Projections also do not satisfy the requirements of section 1129(a)(15) of the Bankruptcy Code because the value of the property to be distributed is less than the projected disposable income of the debtor (with what appears to be more than $75,000 of undistributed cash - even assuming the accuracy of expenses and income), resulting in the plan being patently unconfirmable.

6. Accordingly, the Disclosure Statement should not be approved and the Debtors should not be permitted to expend funds soliciting votes on an unconfirmable plan.

**BACKGROUND**

7. The Debtors filed for bankruptcy protection on June 21, 2024 in the United States Bankruptcy Court for the District of New Jersey (the "Court")

8. Waterview is a creditor and former landlord of Romes Urgent Care Services ("Tenant"), a tenant, under a lease dated January 4, 2019. The obligations of the Tenant were guaranteed by Jean-Paul Rome, one of the Debtors, pursuant to a Lease Guaranty.

9. Waterview timely filed a proof of claim on August 30, 2024 (Claim No. 22 on the Court's Claims Register). The claim was filed in the aggregate amount of $596,009.14 (including rejection damage claims).

10. On January 13, 2025 the Debtors filed the Disclosure Statement and Plan.

11. Pursuant the Disclosure Statement:

> The Debtors propose to pay a base dividend of approximately 0.05% to such allowed general unsecured claims to be paid over a 60-month period. Debtor shall make monthly payments of $430 which shall be distributed on a pro-rata basis to general unsecured creditors on a quarterly basis.

Disclosure Statement at p. 17.

12. Attached to the Disclosure Statement are 5 Year Cash Flow Projections for the calendar years 2025 through 2029.

## ARGUMENT

### I. The Disclosure Statement Should Not be Approved Because it Does Not Contain Adequate Information.

13. Proper disclosure is "the pivotal concept in reorganization procedure under the Code." *Oneida Motor Freight, Inc. v. United Jersey Bank (In re Oneida Motor Freight, Inc.)*, 848 F.2d 414, 417 (3d Cir. 1988); *see also In re Crowthers McCall Pattern, Inc.*, 120 B.R. 279, 300 (Bankr. S.D.N.Y. 1990).

14. Under Section 1125(b) of the Bankruptcy Code, a debtor may not solicit the votes of creditors under a plan of reorganization unless the Court has approved a written disclosure statement. A disclosure statement cannot be approved unless it contains "adequate information."

15. Section 1125 of the Bankruptcy code defines "adequate information" as "information of a kind, and in sufficient detail…that would enable such a hypothetical investor typical of the relevant class to make an informed judgment about the plan…." 11

3

U.S.C. § 1125(a)(1).

16. The primary function of a disclosure statement is to provide creditors with information necessary to determine whether to accept or reject a debtor's plan of reorganization. *See In re Lisanti Foods, Inc.*, 329 B.R. 491, 507 (Bankr. D.N.J. 2005) ("The information required will necessarily be governed by the circumstances of the case).

17. In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts look for disclosures related to topics such as:

> (i) the events which led to the filing of a bankruptcy petition;
> (ii) the relationship of a debtor with the affiliates;
> (iii) a description of the available assets and their value;
> (iv) the anticipated future of the company;
> (v) the source of information stated in the disclosure statement;
> (vi) the present condition of a debtor while in chapter 11;
> (vii) the claims asserted against a debtor;
> (viii) the estimated return to creditors under a chapter 7 liquidation;
> (ix) the future management of a debtor;
> (x) the chapter 11 plan or a summary thereof;
> (xi) the financial information, valuations, and projections relevant to the claimants' decision to accept or reject the chapter 11 claim;
> (xii) the information relevant to the risks posed to claimants under the plan;
> (xiii) the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
> (xiv) the litigation likely to arise in a nonbankruptcy context; and
> (xv) the tax attributes of a debtor.[1]

18. The Debtors have failed to provide full disclosure to the Bankruptcy Court and to creditors through which an informed evaluation of the Disclosure Statement or the Plan might be made, specifically with respect to projected income and expenses, and potential recoveries of voidable transfers.

---

[1] *In re U.S. Brass Corp.*, 194 B.R. 420 at 424–25 (Bankr. E.D. Tex. 1996) (listing factors courts have considered in determining the adequacy of information provided in a disclosure statement); *Westland Oil Dev. Corp. v. MCorp Mgmt. Sols., Inc.*, 157 B.R. 100, 102 (S.D. Tex. 1993) (same).

19. Moreover, a Chapter 11 plan and disclosure statement should not be sent to creditors where the Plan is unconfirmable as a matter of law and is not fair and equitable pursuant to Section 1129 of the Bankruptcy Code. In *In re American Capital Equipment, LLC*, 688 F.3d 145 (3d Cir. 2012) the Third Circuit held that a bankruptcy court may determine at the disclosure statement stage that a proposed plan is unconfirmable without first holding a confirmation hearing. The Third Circuit found that the Plan was patently unconfirmable because it did not meet the good faith requirement of Section 1129(a)(3).

20. The Plan in this case is patently unconfirmable and does not meet the good faith requirement of Section 1129(a)(3) or the payment of all disposable income pursuant to Section 1129(a)(15).

## II. THE DEBTORS' DISCLOSURE STATEMENT DOES NOT PROVIDE ADEQUATE INFORMATION

21. The Debtors' Disclosure Statement fails to meet the applicable standard for "adequate information" because it fails to give sufficient information for Landlord and or other general unsecured creditors to make an informed judgment about the proposed plan of reorganization (the "Plan").

22. Although the Disclosure Statement states that the Debtors will be reducing their personal expenses, the Disclosure statement does not explain the necessity for what appear to be excessive personal and business expenses, when less than $26,000 will be paid to unsecured creditors resulting in a distribution of less than half a percent of their claims.

23. Section 1129(a)(15)(B) of the Bankruptcy Code requires "disposable income", as defined in section 1325(b)(2) of the Bankruptcy Code, to be received by creditors during the 5-year period of a plan.[2] The definitions of "disposable income" and "reasonably necessary"

---

[2] The definitions of reasonably necessary are further defined and calculated by sections 1325(3) and 707(b)(2) of the

5

are further defined and expounded upon by sections 1325(b)(2) and (3) and 707(b)(2) of the Bankruptcy Code to include monthly expenses in amounts specified by, among other things, the National Standards and Local Standards.

24. The Disclosure Statement fails to provide information as to why more than $430,000 of expenses (in the categories listed below) are reasonably necessary and would be proper expenses for determining disposable income or why expenses exceeding the National and Local standards should be permitted.[3]

25. The income also appears to substantially understated by hundreds of thousands of dollars without any explanation.

26. <u>Monthly Income During the Chapter 11 Case is Higher than Projected Income</u>. The Disclosure Statement acknowledges that "[t]he Debtors' Operating Reports from July 2024 through November 2024 indicate that the Debtors have been able to generate…an average of $48,0888 per month." Disclosure Statement at 26. The Disclosure Statement also states "Dr. Romes has steadily increased his income each month." Disclosure Statement at p. 10.

27. Nevertheless, the Projections reflect income averaging only $38,273 per month in 2025, and do not go above $43,000 during any month over the 5 years in the Projections. There is no explanation in the Disclosure Statement for the significant discrepancy and drop

---

Bankruptcy Code. Moreover, Waterview surmises that the monthly expenses that currently may be allowed for various categories should fall as their dependent children graduate and are no longer dependent in the later years of the 5-year cash projections.

[3] In addition to the categories listed in the above-paragraphs, it appears the Debtors are over the National Standards and Local Standards in most, if not all of the other expense categories. Moreover, the Debtors allowable expenses should go down as the Debtors' children are over 21 and to the extent they are now or will no longer be part of the Debtors' household. It is not surprising that expenses are over the National Standards when spending patterns during the course of the Chapter 11 case seem replete with expense that do not appear necessary (for instance (a) $1,250.57 was purchased on October 24, 2024 at Wine and Spirits, which appears to be a wine and liquor store, and (b) $536.37 was purchased at Rose Rosa Jewelry on November 20, 2024 – to highlight just a couple of expenses that seem excessive or improper).

6

of income in the Projections, compared with the Debtors' actual income. Increasing the Projections to the reality of the Debtors' actual income will make hundreds of thousands of dollars more available for distribution to general unsecured creditors.

28. Improper or Excessive Personal Expenses. The Cash Flow Projections for the period January 2025 through December 2029[4] include the following personal expenses that do not appear necessary or appear blatantly excessive for the Debtors include:

- Kids College Room, Board & Expenses - $126,400;
- Telephone, cell phone, Internet & Cable - $47,751;
- Restaurants - $23,266; and
- Entertainment - $19,632.

29. Business Expenses That Do Not Appear Necessary. Although the Disclosure Statement states that Dr. Romes went back to work as an emergency room doctor and is working as an independent contractor for four separate agencies, there is no explanation as to why Dr. Romes has the following business expenses for the period January 2025 through December 2029[5]:

- Travel - $96,139;
- Meals – 80,112 (in addition to Food and Housekeeping expenses under personal expenses);
- Auto Maintenance - $19,228 (in addition to transportation gas and maintenance under personal expenses); and
- ATM Withdrawals - $18,000.[6]

---

[4] Waterview also asserts the cash flow projections should run from confirmation or the effective date of a plan (to ensure payment and projections of disposable income reflect the full 60 months of a plan), especially considering that the Debtors acknowledge they "have various monthly expenses that will be coming to an end or will be reduced over the next few months." Disclosure Statement at p. 26.

[5] For instance, on November 12, 2024 the Debtors appear to have charged $1,610.96 for a cruise. While this was a purchase during the Chapter 11 case and not a future purchase, it raises questions whether the Projections' travel expenses are only actual business expenses.

[6] An ATM withdrawal is not an expense it is a transfer of cash from a bank account into fungible cash.

7

30. <u>All Available Disposable Income is Not Proposed to be Distributed.</u> Even after taking into account expenses that appear unreasonable and deflated income amounts, the Debtors are still left with net cash flow that is not projected to be distributed. As set forth on page 26 of the Disclosure statement:

> "[t]he Cash Flow Projections illustrate that the Debtors will continue to accumulate an average $126,00 per year in net income. The Debtors shall make monthly payments to the Disbursing Agent, in the amount of $8,742 per month. From the Debtors' monthly payments quarterly payments shall be made by the Disbursing Agent to pay the secured claim of M&T Bank and to general unsecured creditors."

Disclosure Statement at p. 26.

31. With monthly payments of (a) $430 for general unsecured creditors and (b) $8,742 to M&T Bank, the yearly distributions aggregate to only $110,064. Accordingly, with an average cash accumulation of $126,000, more than $15,000 per year on average (or $75,000 in the aggregate) will be available for distribution to creditors over the course of the Plan.

32. <u>Actual and Projected Recovery of Preference and Fraudulent Avoidance Actions</u>. The Debtors state that "[n]o preference or fraudulent conveyance actions exist, and none are expected to be filed." There has been no disclosure as to what has been investigated and whether avoidance actions may exist, including tuition or other payments to or for the benefit of children over the age of 18.[7]

33. A cursory review of the monthly operating report attached to the Disclosure Statement indicates that on November 12, 2024 $1,700 was transferred to "kids investment accounts" and on November 13, 2024 a $550 Zelle payment was made to Anne-Marie Romes. These

---

[7] *See In re Palladino*, 942 F.3d 55 (1st Cir. 2019) (allowing the recovery of avoidance actions relating to tuition payments for adult children). According to the Debtors' bankruptcy petition, as of the Petition Date, the Debtors' had two dependent children ages 20 and 21. The monthly operating report filed with the Disclosure Statement showed payments aggregating $3,700 in November 2024 to "kids account for room, board, food and spend" and raises questions as to whether payments were made before the Petition Date that could be recovered for the benefit of creditors.

8

payments raise questions whether there are avoidable actions (including section 549 actions) that would bring additional funds into the estate for distribution to creditors and/or should be included in a liquidation analysis.

## II.  THE DEBTORS' DISCLOSURE STATEMENT IS PATENTLY UNCONFIRMABLE

34. The Projections provided in the Disclosure Statement fail to satisfy the requirements of 1129(a)(15) by including expenses that are not reasonably necessary and are not proper expenses for determining disposable income. Moreover, the Projections fail to provide for the distribution of all disposable income (even if all expenses disclosed are permissible). It is apparent that with these deficiencies that the Plan is not proposed in good faith and is unconfirmable.

35. Accordingly, the Plan cannot be confirmed as proposed and approval of the Disclosure Statement should be denied.

## RESERVATION OF RIGHTS

36. Waterview further reserves the right, as appropriate, to augment the Objection prior to or at the hearing on the Disclosure Statement, to present such other objections following review of any response filed by the Debtors.

**WHERFORE**, Waterview respectfully requests entry of an order denying the approval of Debtors' disclosure statement or requiring modifications to significantly increase payments for unsecured creditors, and granting such other relief as is just and proper.

Dated: February 11, 2025

Respectfully submitted,

*/s/ Jeffrey M. Traurig*
**TRAURIG LAW LLC**
One University Plaza, Suite 124
Hackensack, NJ 07601
(646) 974-8650 (Telephone)
jtraurig@trauriglaw.com

*Counsel for Waterview Marketplace Owner LLC*