# UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
NEWARK DIVISION

In re:  Jean-Paul Romes  
       Lisa A. Romes

Case No.  24-16283-JKS

## TRANSFER OF CLAIM OTHER THAN FOR SECURITY

A CLAIM HAS BEEN FILED IN THIS CASE or deemed filed under 11 U.S.C. § 1111(a). Transferee hereby gives evidence and notice pursuant to Rule 3001(e)(2), Fed. R. Bankr. P., of the transfer, other than for security, of the claim referenced in this evidence and notice.

| Flagstar Bank, N.A. | Flagstar Bank, N.A. |
|---|---|
| Name of Transferee | Name of Transferor |

Name and Address where notices to transferee servicer should be sent:  
**Nationstar Mortgage LLC**  
**P.O Box 619096**  
**Dallas, TX 75261-9741**

Court Claim # (if known): 8-1  
Amount of Claim: $87,944.53  
Date Claim Filed: 07/30/2024

Phone: 877-343-5602  
Last Four Digits of Acct #   6795

Phone: 800-393-4887  
Last Four Digits of Acct #   1020

Name and Address where transferee servicer payments should be sent (if different from above):  
**Nationstar Mortgage LLC**  
**P.O. Box 619094**  
**Dallas, TX 75261**

Phone: 877-343-5602  
Last Four Digits of Acct #:  6795

By:  /s/Kinnera Bhoopal  
    Authorized Agent for Transferee

Date:  05/21/2025

Penalty for making a false statement: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 & 3571

| | |
|---|---|
| In Re:<br>Jean-Paul Romes<br>Lisa A. Romes | Bankruptcy Case No.: 24-16283-JKS<br><br>Chapter: 11<br><br>Judge: John K. Sherwood |

## CERTIFICATE OF SERVICE

I, Kinnera Bhoopal, of McCalla Raymer Leibert Pierce, LLP, 1544 Old Alabama Road, Roswell, Georgia 30076, certify:

That I am, and at all times hereinafter mentioned, was more than 18 years of age;

That on the date below, I served a copy of the within Transfer Of Claim filed in this bankruptcy matter on the following parties at the addresses shown, by regular United States Mail, with proper postage affixed, unless another manner of service is expressly indicated:

Jean-Paul Romes
5125 Glenbrook Rd
Stroudsburg, PA 18360

Lisa A. Romes
5125 Glenbrook Rd
Stoudsburgh, PA 18360


Marc C Capone                                             (*served via ECF Notification*)
Gillman Capone, LLC
770 Amboy Avenue
Edison, NJ 08837

US Dept of Justice                                        (*served via ECF Notification*)
Office of the US Trustee
One Newark Center Ste 2100
Newark, NJ 07102

I CERTIFY UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.


Executed on:    05/21/2025            By:    /s/Kinnera Bhoopal
                  (date)                     Kinnera Bhoopal
                                             Authorized Agent for Transferee

# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

**Property Serving as Security (the "Property"):**   5125 GLENBROOK RD, STROUDSBURG, PENNSYLVANIA 18360-6793

**Borrower's Name and Address:**   JEAN-PAUL ROMES, 5125 GLENBROOK RD, STROUDSBURG, PENNSYLVANIA 18360-6793

**Lender's Name and Address:**   FLAGSTAR BANK, FSB, A FEDERAL SAVINGS BANK, 5151 CORPORATE DRIVE, TROY, MICHIGAN 48098-2639

| | | |
|---|---|---|
| **Date:** DECEMBER 7, 2015 | **Loan Number:** ▇▇▇▇▇▇ | **Loan Priority:** Junior Lien |
| **Credit Limit:** $ 87,600.00 | **Draw Period:** 120 Mos. | **ANNUAL PERCENTAGE RATE:** 6.2400 |
| **Initial Advance:** $ 25,000.00 | **Repayment Period:** 240 Mos. | **Margin:** 2.9900 |
| **Minimum Advance:** $ N/A | **Maturity Date:** 12/10/45 | **Max. ANNUAL PERCENTAGE RATE:** 18.0000 |
| **Minimum Balance:** $ N/A | **Billing Cycle:** MONTHLY | **Min. ANNUAL PERCENTAGE RATE:** 1.990 |
| | | **Fees and FINANCE CHARGES:** See Section 10 and Page 7 |

1. **Home Equity Line of Credit Agreement.** This Home Equity Line of Credit Agreement ("Agreement") governs your Home Equity Line of Credit Account ("Account") with the lender named above ("Lender"). Your Account is a credit arrangement in which we make loans to you by advancing funds ("Advances") at your direction, allowing you to repay those Advances and take additional Advances, subject to the terms of this Agreement. This Agreement will remain in full force and effect notwithstanding that the Account Balance under the Agreement may occasionally be reduced to an amount equal to or less than zero.
   In this Agreement, the terms "we," "us," and "our" refer to the Lender or to anyone who takes this Agreement by transfer or assignment. Except as noted below, the terms "Borrower," "you," "your," and "yours" refer to each person that signs this Agreement or has authority to use the Account. Read this Agreement carefully so that you know how your Account works. You should keep a copy of this Agreement for your records.
2. **Terms and Definitions.** The following terms are defined as set forth in this Section. Other terms are defined elsewhere in this Agreement.
   A. **"Account Balance"** is the total unpaid principal of Advances made under the Account, plus unpaid FINANCE CHARGES, outstanding fees, charges, costs, and credit insurance premiums.
   B. **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
   C. **"Billing Cycle"** is the period of time normally covered by Billing Statements and includes that period of time even when a Billing Statement is not sent because there is otherwise no balance or activity on your Account for that period. The number of days in each Billing Cycle may vary from time to time. Your Billing Cycle is stated on page 1 of this Agreement. However, the first Billing Cycle may be shorter than subsequent Billing Cycles.
   D. **"Billing Statement"** is a statement that we will furnish to you periodically that provides important information regarding your Account activity.
   E. **"Credit Limit"** is the maximum aggregate amount of unpaid Advances that we will ordinarily allow you to owe us at any time under this Agreement.
   F. **"Daily Periodic Rate"** is a rate equal to the ANNUAL PERCENTAGE RATE that is in effect, divided by 365 (or 366 in a leap year).
   G. **"Draw Period"** is the period of time during which you may request Advances from your Account. The Draw Period is stated above on Page 1.
   H. **"Initial Advance"** is the minimum amount of the first Advance from your Account that you must request and accept. The amount of your required Initial Advance (if any) is stated above on Page 1.
   I. **"Maturity Date"** is the date on which the entire Account Balance and all other sums owed under this Agreement are due. The Maturity Date of your Account is stated above on Page 1.
   J. **"Minimum Advance"** is the least amount of money you may request at any one time from your Account. Your Minimum Advance is stated above on Page 1.
   K. **"Minimum Balance"** is the minimum outstanding principal balance that you must maintain under your Account during the Draw Period once the Initial Advance is taken. Your Minimum Balance is stated above on Page 1.
   L. **"Minimum Payment"** is the minimum amount you must pay on your Account for each Billing Cycle. This amount will be reflected on each periodic Billing Statement for each Billing Cycle.
   M. **"Repayment Period"** is the period of time that begins at the end of the Draw Period. During any Repayment Period, you may no longer request Advances from your Account. The Repayment Period, if any, is stated above on Page 1.
   N. **"Security Instrument"** is the mortgage, deed of trust, or security deed encumbering the Property, dated the same date as this Agreement, that protects us from possible losses that might result if you do not keep the promises that you make in this Agreement. That Security Instrument describes how and under what conditions you may be required to make immediate payment in full of all amounts you owe under this Agreement.

HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT - HYBRID
USHEAGH.HLC 02/10/15 ©2014 DOCMAGIC, INC.    Page 1 of 8

DocMagic eForms
www.docmagic.com



3. **Borrower's Promise to Pay.** During the term of this Agreement, you will be required to make Minimum Payments in accordance with the terms of this Agreement and Security Instrument. We will send you Billing Statements describing your Account activity and your Minimum Payment. You will receive a Billing Statement approximately every 30 days. Payments will be due as shown on the Billing Statements. You may repay all or any part of your Account Balance, at any time, without penalty, subject to the limitations of this Agreement. If you fail to make your Minimum Payment, we may enforce our rights and remedies under Section 14 and elsewhere in this Agreement and Security Instrument. You must pay the entire outstanding Account Balance on or before the Maturity Date stated on Page 1.

4. **Security.** All amounts due under the Account are secured by the Security Instrument. Borrower agrees to pay all amounts due, and perform all covenants and obligations required of Borrower under the Security Instrument. If it becomes necessary for us to advance funds to you above the Credit Limit to protect our security interest, those amounts in excess of the Credit Limit will be owed by you and will be secured by the Security Instrument, unless prohibited by Applicable Law. The Security Instrument and this Agreement are related documents and a default under either document will be treated as a default under both documents. To the extent permitted by Applicable Law, the lien of the Security Instrument will continue and will have the same priority if, with your consent, we renew, extend, amend, modify or substitute this Agreement. In such event, you agree to execute any additional documents necessary to achieve the action being taken.

5. **Advances.** During the Draw Period, you may request Advances from your Account. Any amounts you subsequently repay to us will be available for additional Advances, subject to the limitations of this Agreement. If there is more than one Borrower, each of you may obtain Advances in accordance with the terms of this Agreement. Each of you is individually responsible for payment of the entire Account Balance regardless of who actually requested the Advance.

The amount of your first Advance must be at least equal to the Initial Advance, but not more than your Credit Limit. You may not receive the Initial Advance or any subsequent Advance until after (a) any three-day rescission period prescribed by federal law has elapsed; (b) we are reasonably satisfied that no person has rescinded the Agreement; and (c) we are satisfied the Security Instrument constitutes an accurate and valid lien on the Property.

If you request an Advance, then elect to stop the payment, you agree to pay the Stop Payment fee stated on Page 7 (if any). If you request an Advance that is less than the Minimum Advance, we may, at our option, pay the Advance. If we do pay that Advance, our payment will not constitute a reduction of the Minimum Advance provisions of this Agreement.

Following the Draw Period, there may be a Repayment Period during which you must make Minimum Payments as stated below. You may not obtain Advances during any Repayment Period. However, during both the Draw Period and any Repayment Period we may, at our option, make Advances from your Account to pay fees, charges, costs, or credit insurance premiums due under this Agreement or the Security Instrument or make other Advances as allowed by the Security Instrument, and all of these Advances will be added to the Account Balance, bear interest from the date of disbursement (subject to Applicable Law), and be subject to all of the terms of this Agreement and the Security Instrument.

6. **Credit Limit; Minimum Balance.** Your initial Credit Limit is stated on Page 1. You may not request an Advance from your Account that would cause your outstanding balance of Advances to exceed your Credit Limit. We are not obligated to pay any Advance request that would cause your outstanding balance of Advances to exceed your Credit Limit. If we do make an Advance that causes your outstanding balance of Advances to exceed your Credit Limit, this will not constitute an increase in your Credit Limit. You agree to pay any Overlimit Fee stated on Page 7 in connection with any Advance that causes the outstanding Account Balance to exceed your Credit Limit.

7. **Minimum Payment Calculation.** During the Draw Period, your Minimum Payment for each Billing Cycle will equal    interest only or $75, whichever is greater.

During the Repayment Period, if any, your minimum payment for each Billing Cycle will equal    the amount sufficient to repay in full by the Maturity Date, in substantially equal payments, the Account Balance and all accrued periodic finance charges and other fees, charges and costs at the then current ANNUAL PERCENTAGE RATE.

If there is no Repayment Period, you will be required to pay your entire outstanding Account Balance at the end of the Draw Period. You may repay all or part of the new Account Balance shown on your Billing Statement at any time without penalty. Unless your Account is terminated and we require immediate payment of the entire outstanding Account Balance as provided in Section 14, you must pay at least the Minimum Payment for each Billing Cycle by the payment due date shown on the Billing Statement. [The Minimum Payments may not be sufficient to fully repay the principal that is outstanding on your Account. If they are not, you will be required on the Maturity Date to pay the entire Account Balance then outstanding in a single payment.]

8. **Application of Payments.** We will apply all payments that we receive from you in the following order: to pay (i) amounts due under the Security Instrument to secure the amounts advanced under your Account and to protect our security; (ii) any escrow payments, if we require such payments under the Security Instrument; (iii) any late charges; (iv) any other fees and charges other than FINANCE CHARGES; (v) billed and unpaid FINANCE CHARGES; and (vi) any unpaid principal balance. Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Agreement shall not extend or postpone the due date or change the amount of the Minimum Payment. We may, at our discretion, withhold available credit on your Account up to the amount of payments you make to assure that the payment instrument is honored.

9. **ANNUAL PERCENTAGE RATE.**

   A. **Initial Rate.** The initial ANNUAL PERCENTAGE RATE under this Agreement is    6.2400 % (corresponding to a Daily Periodic Rate of 0.01710 %). This initial rate is equal to the sum of the Index and Margin, [rounded to the nearest one-eighth of one percentage point (0.125%)], as described in paragraph B of this Section 9. The ANNUAL PERCENTAGE RATE does not include costs other than interest. The ANNUAL PERCENTAGE RATE and corresponding Daily Periodic Rate are variable rates and therefore may increase or decrease on the first day of each Billing Cycle based on the changes in the Index.

   ☐ **"Discounted" Initial Rate.** If this box is checked, the initial ANNUAL PERCENTAGE RATE listed in paragraph A of this Section 9 is "discounted," and this discounted rate will be in effect only for a period of    N/A   months from the date of this Agreement. Thereafter, the ANNUAL PERCENTAGE RATE (and the corresponding Daily Periodic Rate) will be determined as set forth in paragraph B in this Section 9. The Initial Rate is not equal to or based on the sum of the Index and Margin. Without the discount, the initial ANNUAL PERCENTAGE RATE under this Agreement would be    N/A %. (corresponding to a Daily Periodic Rate of    N/A %).



**B. Rate Computation.** The ANNUAL PERCENTAGE RATE under this Agreement is based upon the sum of the Index and the Margin. During the Draw Period, the ANNUAL PERCENTAGE RATE may increase or decrease based upon changes in the Index, and those changes will affect the amounts of your Minimum Payment and periodic FINANCE CHARGES. The "Index" is   Prime Rate as published in the Wall Street Journal.

The "Margin" is         2.9900 %.
If the Index is no longer available, we will use a substitute Index (and, if necessary, a new Margin). The substitute Index will have a historical movement substantially similar to the original Index, and the substitute Index and Margin will result in an ANNUAL PERCENTAGE RATE that is substantially similar to the ANNUAL PERCENTAGE RATE in effect at the time the Index becomes unavailable.

**C. Draw Period Adjustments.** After any discounted Initial Rate has expired, the ANNUAL PERCENTAGE RATE may be adjusted on the first day of each Billing Cycle during the Draw Period (each, a "Change Date"). Except as stated below, on each Change Date the ANNUAL PERCENTAGE RATE will be determined by adding the Margin to the value of the Index on the last  day of the prior month. [The Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).] Subject to the limit stated in Section 9(D) below, this amount will be your new ANNUAL PERCENTAGE RATE until the next Change Date. Each change in the ANNUAL PERCENTAGE RATE (and the corresponding Daily Periodic Rate) will take effect without prior notice and will apply to both new Advances and your Account Balance as of the Change Date.

**D. Final Adjustment.** The ANNUAL PERCENTAGE RATE also shall be adjusted on the first day of the first Billing Cycle during the  Repayment Period. On that date, the ANNUAL PERCENTAGE RATE will be determined by [adding the Margin to the value of the Index on the last day of the prior month. The Lender will then round the result of this addition to the nearest one-eighth of  one percentage point (0.125%).] Subject to the limit stated in Section 9(E) below, this amount will be your new ANNUAL PERCENTAGE RATE until the Maturity Date.

**E. Limits.** There is no limit to the amount by which the ANNUAL PERCENTAGE RATE can increase or decrease on any  Change Date or in any 1-year period. The maximum ANNUAL PERCENTAGE RATE that can be imposed is         18.0000 %. The minimum ANNUAL PERCENTAGE RATE that can be imposed is         1.990 %.

**10. FINANCE CHARGES.** You agree to pay all FINANCE CHARGES that accrue on your Account. You will have to pay both periodic FINANCE CHARGES and other FINANCE CHARGES in connection with your Account. Periodic FINANCE CHARGES begin to accrue on the day that there is an unpaid balance due on your Account and will continue to accrue until the Account Balance is paid in full. There is no grace period that will allow you to avoid the assessment of periodic FINANCE CHARGES on your Account.

The total periodic FINANCE CHARGE for each Billing Cycle will be calculated by first multiplying the Daily Balance (as described below) for each day of the Billing Cycle by the Daily Periodic Rate that is in effect for that day. This provides the periodic FINANCE CHARGE for each day of the Billing Cycle. The periodic FINANCE CHARGES for each day of the Billing Cycle will be added together to get the total periodic FINANCE CHARGE for the Billing Cycle. The other FINANCE CHARGES that you will have to pay in connection with your Account are listed below on Page 7.

To calculate the "**Daily Balance**" for each day of the Billing Cycle, (i) we start with the beginning Account Balance   of your Account that day, (ii) exclude any unpaid finance charges or other charges provided for under this Agreement, (iii) add any new Advances posted to the Account, and (iv) then we subtract any payments or credits applied to your Account Balance. If you have a positive balance in your Account on any day, we will not pay any interest on the positive balance and the positive balance will not be treated as a Daily Balance in the calculation of periodic   FINANCE CHARGES.

**11. Finance Charges, Fees, Other Charges, and Costs.** You agree to pay the FINANCE CHARGES, fees and other charges listed on Page 7 if the circumstances triggering their assessment apply. These fees and charges will be added to the Account Balance and are payable as set forth in this Agreement. Subject to any limitations of Applicable Law, you agree to pay all reasonable costs we incur to collect the Account Balance including, without limitation, court costs, attorney's fees, and foreclosure-related expenses, if you default under this Agreement or become involved in any bankruptcy action.

**12. Refund of Fees, Charges, and Costs.** The terms of this Agreement shall be construed to be consistent with Applicable Law. However, if a court of competent jurisdiction or other qualified authority determines that the charges and fees described in this Agreement exceed the limits that Applicable Law allows, then the following shall occur. First, any such purportedly excessive charges or fees shall be reduced to the permitted amount. Second, any amounts collected that exceed the permitted amount will be returned to you, either by  direct payment  or by reducing the Account Balance. Your receipt of a refund made by direct payment to you or credited to your Account will constitute a waiver of any right of action you may have arising out of overcharges or allegedly excessive loan charges or fees.

**13. Property Insurance.** You agree to obtain property insurance against loss or damage to the Property, in the amounts, for the time periods and against the risks that the Security Instrument and/or we require. You agree to provide (i) standard property insurance for the Property in an amount   equal to the replacement cost of the Property and (ii) if we notify you that the Property is located in a flood zone, flood insurance in an amount equal to the lesser of the Credit Limit or the maximum amount available pursuant to the National Flood Insurance program (if we notify you after the date of this Agreement, you agree to obtain such insurance within 45 days of being notified). You agree to provide us with a mortgagee endorsement upon origination and at each renewal of such insurance coverage.

You may obtain the insurance from an insurance carrier of your choice, so long as the insurance carrier is acceptable to us. If you fail to purchase and maintain acceptable property insurance, we may purchase insurance for you on your behalf and at your expense as described in Section 5 of the Security Instrument. We have no obligation to obtain such insurance. Should we take this action, the equity   in the Property and contents thereof may not be protected as you desire. Further, the cost of the insurance may significantly exceed the cost of such insurance that you could have obtained, this cost will be treated    as an Advance and will be subject to a FINANCE CHARGE.

**14. Additional Rights and Remedies.** In addition to the rights described elsewhere in this Agreement and in the Security Instrument, we also have    the following rights:

**A. We can terminate your Account and require you to pay us the entire outstanding Account Balance under this Agreement in one payment, and charge you certain fees, if any of the following occur:**  1) You engage in  fraud  or make a material misrepresentation at any time in connection with your Account; 2) We do not receive the full amount of any Minimum Payment when it is due or you fail to meet any of the other repayment terms of this Agreement; 3) Your action or inaction adversely affects the Property or our rights in it (for this purpose,   the words "you," "your," and "yours" also refer to the owner of the Property, if different than you). Examples of these actions or inactions include, but are not limited to: a) Your death, if you are the sole obligor on the Account; or  the death of all but one

HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT - HYBRID
USHEAGH.HLC  02/10/15  ©2014 DOCMAGIC, INC.          Page 3 of 8

DocMagic *eForms*
www.docmagic.com



obligor which adversely affects our security; b) Illegal use of the Property, if such use subjects the Property to seizure; c) You transfer all or part of your interest in the Property without our written consent; d) All or part of the Property is taken by condemnation or eminent domain; e) Foreclosure of any senior lien on the Property; f) Failure to maintain required insurance on the Property; g) Waste or destructive use of the Property which adversely affects our security; h) Failure to pay taxes or assessments on the Property; i) Permitting the creation of a senior lien on the Property; j) Filing of a judgment against you, if the amount of the judgment and collateral subject to the judgment is such that our security is adversely affected.

We may, at our option, take lesser action than those described in this Section. Such lesser action may include, without limitation, suspending your Account and not allowing you to obtain any further Advances, reducing your Credit Limit, and/or changing the payment terms on your Account. If we take any such action, this shall not constitute an election of remedies or a waiver of our right to exercise any rights or remedies under the remainder of this Section, the remaining provisions of this Agreement, the Security Instrument, or at law or in equity. We may take action under this Section only after complying with any notice or cure provisions required under Applicable Law. In the event we elect not to terminate the Account or take any lesser action as provided in this Section, we do not forfeit or waive our right to do so at a later time if any of the circumstances described above exists at that time.

**B. We can refuse to make additional Advances or reduce your Credit Limit during any period of time in which any of the following are in effect:** 1) The value of the Property declines significantly below the value as determined by us at the time you applied for your Account. This includes, for example, a decline such that the initial difference between the Credit Limit and the available equity in the Property is reduced by fifty percent (50%) or more; and may include a smaller decline depending on individual circumstances; 2) We reasonably believe you will not be able to meet the repayment requirements set forth in this Agreement due to a material change in your financial circumstances; 3) You are in default of a material obligation in this Agreement, including, without limitation, your failing to make a Minimum Payment on a date that it is due; 4) Government action prevents us from imposing the ANNUAL PERCENTAGE RATE provided for in this Agreement; 5) Government action impairs our security interest such that the value of our interest is less than 120 percent of your Credit Limit then in effect; 6) A regulatory agency which supervises us has notified us that continued Advances would constitute an unsafe and unsound practice; 7) The maximum ANNUAL PERCENTAGE RATE allowed under this Agreement is reached. If we refuse to make additional Advances or reduce your Credit Limit under this Section, we will send you a written notice stating the reason for such action. If, for any reason, you believe your ability to obtain Advances or your Credit Limit should be reinstated, you must send us a written request for reinstatement and include in the request the reasons why you believe your ability to obtain Advances or your Credit Limit should be reinstated.

**C. We can modify or amend the terms of the Agreement.** After you open your Account, we may modify or amend the terms of this Agreement and/or the other loan documents pertaining to the Account if any of the following conditions exist: 1) You consent in writing to our proposed modification or amendment at that time; 2) The modification or amendment unequivocally benefits you throughout the remainder of the term of this Agreement; 3) The modification or amendment results only in an insignificant change to the terms of this Agreement and/or the other loan documents; 4) The modification or amendment involves the substitution of a new Index and Margin, as provided in Section 9 above. Any Account Balance on the effective date of any modification or amendment is subject to the modification or amendment.

**15. Suspending or Terminating Your Account.** You may terminate your Account at any time. To do so, you must notify us in writing. If one of you requests termination of the Account, the Account will be terminated for all of you. At our option, we may release some of you from liability under this Agreement and/or under Applicable Law without releasing all of you.

If your Account is terminated for any reason, you will nonetheless remain obligated to pay the Account Balance immediately upon our demand. Upon termination of your Account by either you or us, you must return to us all Checks, Credit Cards, or other Account access devices given to you. If either you or we terminate your Account, you will not be entitled to a refund of any FINANCE CHARGES, fees, charges, or credit insurance premiums paid or payable under the Account.

**16. Other Provisions.**

**A. Account Checks; Credit Cards; Stop Payment Orders.** You may not use the Checks or Credit Card, or otherwise use Advances, to make payments on your Account. You agree that the Checks and Credit Cards are our property and that you will return them to us at our request. Checks that you write will not be returned to you.

We are not responsible if anyone refuses to honor a Check or Credit Card. We may honor postdated Checks and are not responsible if we do so. We will not certify Checks. You agree to notify us immediately by contacting us at the address or telephone number listed on your Billing Statement if there has been, or there may have been, a loss, theft, or unauthorized use of any of the Checks or Credit Cards. You also agree to cooperate with us or any law enforcement agency in any effort to investigate the circumstances surrounding the incident and efforts to minimize potential losses to you or us stemming from any loss, theft, or unauthorized use of a Check or Credit Card.

We will honor an oral or written stop payment order for a Check if we have a reasonable opportunity to act on it. We will not be liable for failing to stop payment if we used ordinary care. Our records will be conclusive evidence of the existence and details of any oral stop payment order or its revocation. If you stop payment, you must tell us your name and account number, the name of the payee and the exact amount, date and number of the Check, and who signed it. If an oral order is not confirmed in writing within 14 calendar days, it will no longer be effective. A written order is effective for 6 months, and you may renew such order every 6 months. We may pay a draft after a written order has expired even though the draft is more than six months old. You agree that we will have no liability to you if any of the information you provide in the oral or written order is incorrect, and we pay the draft. You agree to indemnify us and pay all costs and expenses we incur (including reasonable attorney's fees) as a result of honoring your stop payment order. This indemnity will survive any termination of this Agreement.

**B. Tax Consequences.** You acknowledge that we (including our employees and representatives) have given you no assurances, representations or warranties that the FINANCE CHARGES and other fees and charges paid on your Account are tax deductible. You should consult your own tax advisor concerning the deductibility of the FINANCE CHARGES and other fees and charges for the Account.

**C. Due on Sale.** The Security Instrument includes the following "due on sale" provision relating to certain sales and transfers of the Property:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT - HYBRID
USHEAGH.HLC 02/10/15 ©2014 DOCMAGIC, INC.     Page 4 of 8

DocMagic eForms
www.docmagic.com



If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

D. **Negative Amortization.** If your Minimum Payments are not sufficient to cover the **FINANCE CHARGES** that will accrue on your Account, "negative amortization" will occur. Negative amortization will increase the balance of your Account and reduce the equity in the Property.

E. **Review of Your Account.** Upon our request, you will provide us with current financial and credit information and will sign any additional or corrective documents in connection with this Agreement or the Account. You also authorize us to make credit inquiries regarding your ongoing credit worthiness, and to provide information about you to our affiliates and third parties as permitted by Applicable Law.

F. **Irregular Payments.** We may accept late payments, partial payments, and items marked "payment in full," even if they are not full payments, without losing any of our rights under this Agreement or under Applicable Law.

G. **Delay in Enforcement.** We may delay enforcing our rights under this Agreement without waiving these rights and/or otherwise forfeiting or compromising them.

H. **Legal Purposes.** You may not use any Advances for purposes that violate any applicable federal, state, tribal, or local laws, rules, regulations, or ordinances.

I. **Assumption.** This Account is not assumable. This means that someone buying the Property may not take this Account as his/her own on the terms of this Agreement or on any other terms.

J. **Assignment.** We may transfer this Agreement, the Security Instrument, and any other loan documents relating to the Account to any person or entity without notice to you. You may not transfer or assign your rights or delegate your duties under this Agreement. Subject to the other provisions of this Section, this Agreement is binding on your and our heirs, successors, and personal and legal representatives.

K. **Captions and Headings.** The captions and headings of the sections of this Agreement are for convenience only and are not to be used to interpret or define the provisions of this Agreement.

L. **Change of Address, Name or Employment.** You agree to immediately notify us in writing of any change in your name, residence or mailing address, or employment.

M. **Governing Law.** Federal law and the law of the jurisdiction in which the Property is located shall govern this Agreement. All rights and obligations contained in this Agreement are subject to any requirements and limitations of Applicable Law.

N. **Joint and Several Liability.** Each of you will be legally responsible for payment of the total amount of the Account Balance and fees, charges, costs, and credit insurance premiums regardless of any divorce, legal separation, or other legal proceedings.

O. **Severability.** If any portion of this Agreement conflicts with, contradicts or otherwise controverts applicable federal, state, tribal, or local law, then to the extent possible such portion shall be construed as being consistent with such Applicable Law, and further will be deemed changed to the extent necessary to accomplish this end. If any such conflicting or contradicting portion of this Agreement cannot be so construed or changed, it will be deemed severed from this Agreement and will not affect other provisions of this Agreement, which shall be given full effect without regard to the conflicting or contradicting portions.

P. **Waiver of Notice.** Subject to Applicable Law, you waive presentment for payment, demand, protest, and notice of dishonor, notice of acceleration, notice of intent to accelerate, and notice of nonpayment.

Q. **Liability for Unauthorized Use of a Credit Card.** You may be liable for the unauthorized use of your Credit Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft, or possible unauthorized use. In any case, your liability for the unauthorized use of your Credit Card will not exceed $50.

R. **Sending of Notices.** Except as otherwise provided in this Agreement, all notices must be in writing. Notice to any of you shall be deemed notice to all of you. Any Billing Statement or notice to you under this Agreement will be sufficiently given if sent to your address on file in connection with the Account or to a new address of which you have notified us in writing at least 20 calendar days before the sending of the Billing Statement or notice. Any notice that you give to us must be provided to us at the address listed on Page 1, or a different address if you are notified of the same.

17. **YOUR BILLING RIGHTS - KEEP THIS NOTICE FOR FUTURE USE.** This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

A. **Notify Us in Case of Errors or Questions about Your Bill.** If you think your Billing Statement is wrong, or if you need more information about a transaction on your Billing Statement, write us at the address listed on your statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first Billing Statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights. In your letter, give us the following information: (i) Your name and account number; (ii) The dollar amount of the suspected error.; and (iii) Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about. If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment your letter must reach us three business days before the automatic payment is scheduled to occur.

B. **Your Rights and Our Responsibilities after We Receive Your Written Notice.** We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct.

After we receive your letter, we cannot try to collect any amount you question or report you as delinquent. We can continue to bill you for the amount you question, including **FINANCE CHARGES**, and we can apply any unpaid amount against your Credit Limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question. If we find that we made a mistake on your bill, you will not have to pay any **FINANCE CHARGES** related to the mistaken amount. If we didn't make a mistake, you may have to pay **FINANCE CHARGES**, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due.

HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT - HYBRID
USHEAGH.HLC  02/10/15  ©2014 DOCMAGIC, INC.    Page 5 of 8

DocMagic eForms
www.docmagic.com



If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question on your bill. And, we must tell you the name of anyone we reported you to. We must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we cannot collect the first $50 of the questioned amount, even if your bill was correct.

    **C. Special Rule for Credit Card Purchases.** If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right: (i) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and (ii) The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

**18. Liability for Unauthorized Use of a Credit Card.** You may be liable for the unauthorized use of your credit card. You will not be liable for unauthorized use that occurs after you notify us orally or in writing at the address or telephone number listed on your Billing Statement of the loss, theft, or possible unauthorized use. In any case, your liability will not exceed $50.

## FEES AND CHARGES

Subject to limits of Applicable Law, you agree to pay the following fees, charges and closing costs pursuant to this Agreement:

**Late Fees.** On any payment not received within    19    days of the due date, a fee of    $35.00

**Annual Fee.** A fee of $ 75.00    for each year of the Draw Period.
**Overlimit Fee.** A fee of $ 35.00    for each Advance which causes your Account Balance to exceed your Credit Limit.
**Return Payment Fee.** A fee of $ 36.00    for each check or negotiable instrument we receive in payment for your Account, which is returned unpaid for any reason.
**Stop Payment Fee.** A fee of $ 36.00    for each stop payment request made on a draft drawn directly on this Account. If you request a stop payment on any check, you must clearly identify your Account and agree to indemnify and hold us harmless from any and all loss, cost, damage, or expense (including attorneys' fees) incurred by us as a result of, or in connection with, such request.

## ADDITIONAL CLOSING CHARGES

| ITEM | AMOUNT | POC | PAID BY |
|---|---|---|---|
| **FINANCE CHARGES** | | | |
| None | | | |
| | | | |
| OTHER CHARGES: | | | |
| | | | |
| Recording Mortgage Fee | 109.00 | 109.00 | Lender |
| Title Document Fee | 300.00 | 300.00 | Lender |
| Title - Notary Fee | 125.00 | 125.00 | Lender |
| Appraisal Fee | 430.00 | 430.00 | Lender |
| Credit Report | 18.25 | 18.25 | Lender |
| Flood Certification (Life Of Loan) | 11.50 | 11.50 | Lender |

Subtotal of Estimated Fees and Costs: $ 0.00

HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT - HYBRID
USHEAGH.HLC 02/10/15 ©2014 DOCMAGIC, INC.    Page 7 of 8

DocMagic eForms
www.docmagic.com



You agree to the terms and conditions contained in this Agreement and you acknowledge receipt of a completed copy of this Agreement.

Notice to borrower: This document contains provisions for a variable interest rate.

WITNESS: ACCEPTED AND AGREED TO:

_____  12-7-2015  _____
Borrower  JEAN-PAUL ROMES         Date        Borrower                    Date

_____   _____    _____   _____
Borrower                          Date     Borrower                          Date

_____   _____    _____   _____
Borrower                          Date     Borrower                          Date



PAY TO THE ORDER OF
WITHOUT RECOURSE
FLAGSTAR BANK, FSB
BY: _____
MELINDA McNEAL
VICE PRESIDENT

HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT - HYBRID
USHEAGH.HLC 02/10/15 ©2014 DOCMAGIC, INC.        Page 8 of 8

DocMagic eForms
www.docmagic.com